## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BRANCH BANKING AND TRUST COMPANY,**

     **Plaintiff,**

**v.**                                                           **Case No: 8:14-cv-2848-T-36AEP**

**PAPA & GIPE, P.A., et al.,**

     **Defendants.**

_____/

## O R D E R

This matter comes before the Court upon Plaintiff's Motion for Summary Judgment (Doc. 42), Defendants' response in opposition (Doc. 46), and Plaintiff's reply (Doc. 49).  On June 1, 2016, the Court heard oral argument.  Doc. 52.  Having considered the parties' submissions and being fully advised of the premises, the Court will GRANT the Motion as to liability and DENY the Motion, in part, as to damages.

### I.    Background

Invoking this Court's diversity jurisdiction, Plaintiff Brank Banking and Trust Company ("BB&T") sues Defendants Papa & Gipe, P.A. ("P&G"), DAPRSG Landholding, Inc. ("DAPRSG"), David A. Papa ("Papa"), and Robert S. Gipe ("Gipe") for the breach of two promissory notes and associated guaranties.  BB&T maintains that P&G defaulted under one promissory note by failing to make a timely maturity payment, and further alleges that the default under the first note triggered a cross-default provision in the second note.  The details of the transactions follow.

### A.  Note One

On March 18, 2009, P&G executed and delivered to BB&T's predecessor-in-interest, Colonial Bank, N.A. ("Colonial Bank"), a promissory note in the amount of $100,000, which renewed two prior promissory notes.  Doc. 42-1, "Biegel Aff." ¶ 5.  On March 29, 2011, P&G and BB&T executed a "Modification, Renewal and Restatement of Note," in the principal amount of $100,000 ("Note One").  *Id.* at ¶ 6.  On March 29, 2013, P&G executed a "Note Modification Agreement" to extend the maturity date on Note One.  *Id.* at ¶ 7.  P&G executed two additional modifications on April 25, 2014, and August 8, 2014.  *Id.* at ¶¶ 8-9.  Pursuant to the final modification, Note One had a scheduled maturity date of September 29, 2014.  *Id.* at ¶ 9; Doc. 42-1 at 32.

P&G does not dispute that it failed to pay BB&T all sums due under Note One at the scheduled maturity date of September 29, 2014.  Biegel Aff. at ¶ 11.  As discussed in more detail below, P&G instead claims that BB&T should be estopped from declaring a default.  P&G also represents that it paid the entire principal amount due under Note One after the maturity date. Nonetheless, BB&T alleges that P&G continues to owe attorneys' fees, totaling $20,255.26 as of December 2015.  *Id.* at ¶ 13.  BB&T has demanded that P&G pay the amounts due under Note One, and P&G has failed to do so.  *Id.* at ¶ 14.

At the inception of Note One, both Papa and Gipe executed a "Commercial Guaranty."  *Id.* at ¶¶ 21, 31.  Papa and Gipe executed additional guaranties in connection with each of the Note One modifications.  *Id.* at ¶¶ 22-25, 32-35.

### B.  Note Two

On November 6, 2007, DAPRSG executed and delivered to Colonial Bank a promissory note in the amount of $950,000 ("Note Two").  *Id.* at ¶ 15.  In connection with Note Two, Papa,

Gipe, and P&G each executed and delivered to Colonial Bank a "Commercial Guaranty." *Id.* at ¶¶ 28, 38, 41.

As discussed below, Note Two includes a cross-default provision, which allows the lender to declare a default on Note Two based on the default by the borrower or a guarantor with respect to "any other agreement" with the lender. Doc. 42-1 at 107. Because P&G is a guarantor for Note Two, BB&T alleges that the cross-default provision was triggered by P&G's default on Note One.

As a result of the alleged default under Note Two, BB&T elected to accelerate and declare immediately due and owing the entire unpaid balance on Note Two, together with accrued interest and late charges. Biegel Aff. at ¶ 18. BB&T alleges that DAPRSG owes a principal balance of $695,076.55 plus interest and attorneys' fees for a total amount due of $701,245.64 through December 10, 2015. *Id.* at ¶ 19. Although a demand has been made on DAPRSG to pay the amounts due and owing under Note Two, DAPRSG has failed to pay. *Id.* at ¶ 20.

To further secure payment of Note Two, DAPRSG executed a mortgage and "Assignment of Rents". *Id.* at ¶¶ 44, 45. On October 9, 2014, BB&T filed a U.C.C. Financing Statement to perfect its security interest in the rents. *Id.* at ¶ 46. On October 13, 2014, BB&T sent written notice to DAPRSG notifying it of the Note Two default and demanding that all rents be turned over to BB&T immediately. *Id.* at ¶ 50; Doc. 42-1 at 106.

BB&T filed the instant action on November 14, 2014. Doc. 1. BB&T asserts the following claims: an action on Note One against P&G (Count I), an action on Note Two against DAPSRG (Count II), an action on the Papa guaranties for Note One (Count III), an action on the Gipe guaranties for Note One (Count IV), an action on the Papa guaranty for Note Two (Count V), an action on the Gipe guaranty for Note Two (Count VI), an action on the P&G guaranty for Note Two (Count VII), and an action against DAPSRG to foreclose BB&T's lien on the rents, pursuant

3

to Fla. Stat. §§ 697.01 and 697.07 (Count VIII).  *Id.*  Defendants filed an answer, but asserted no affirmative defenses.  Doc. 38.  BB&T now moves for summary judgment on each count.

## II.      Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact.  *Id.* at 324.  Issues of fact are genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247–48.  A fact is "material" if it may affect the outcome of the suit under governing law.  *Id.* at 248.  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.

### III.    Discussion

### A.  Preliminary matters

BB&T filed the instant Motion on December 11, 2015, approximately two months before the discovery deadline of February 5, 2016.  Doc. 42; Doc. 18 at 2.  In response to the Motion, Defendants maintain that the matter is not ripe because "P&G has requested depositions of BB&T personnel who have details of communications about issues raised in this motion and BB&T counsel has refused to comply with deposition requests now forcing P&G to file a motion to compel depositions."  Doc. 46 at 7.

A review of the docket reveals that Defendants did not file a motion to compel.  Moreover, BB&T maintains that it did not improperly refuse to schedule depositions.  On March 30, 2015, BB&T's previous counsel informed Gipe that BB&T would not comply with discovery requests until Defendants filed a Certificate of Interested Persons and Corporate Disclosure Statement.  Doc. 49-2.  As a basis for that refusal, counsel cited this Court's Case Management and Scheduling Order, which provides: "No party may seek discovery from any source before filing and serving a Certificate of Interested Persons and Corporate Disclosure Statement."  Doc. 49-2; *see* Doc. 18 at 3.  After Defendants made the requisite filing on April 1, 2015, BB&T and Defendants' counsel communicated regarding deposition dates.  Doc. 25; Doc. 49-1.  Defendants do not contend that BB&T refused to allow depositions at that juncture.  Instead, Defendants acknowledged at the hearing that they simply failed to pursue any discovery.

Rule 56 of the Federal Rules of Civil Procedure provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R.

Civ. P. 56(d).  A party seeking to use Rule 56(d) "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843-44 (11th Cir. 1989) (internal citation and quotation marks omitted) (addressing substantially similar provision in Rule 56, previously included in Rule 56(f)).

As explained, Defendants made no meaningful effort to pursue discovery during the discovery period.  Defendants have also not submitted an affidavit or declaration, as required by Rule 56(d), explaining why they are unable to oppose BB&T's Motion.  At the hearing, Defendants asserted that discovery would be relevant to their communications and pattern of dealing with BB&T, facts that they contend would be used to support an unpleaded affirmative defense of equitable estoppel.  However, the nature of Defendants' communications with BB&T should be largely within the personal knowledge of Papa and Gipe.  More notably, even if this Court entertains Defendants' belated equitable-estoppel argument, that defense fails as a matter of law as discussed below.  Accordingly, to the extent that Defendants request a stay or an opportunity to conduct discovery past the discovery deadline, that request is denied.  *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1219 (11th Cir. 2000) (affirming summary judgment on two claims where relevant evidence would have been in the plaintiff's possession and additional evidence would not have changed the outcome); *Bevan v. Durling*, 243 F. App'x 458, 464 (11th Cir. 2007) (affirming summary judgment where the plaintiff had neither conducted discovery nor demonstrated that he had any outstanding discovery requests).

### B.  Breach of the promissory notes

A promissory note is a negotiable instrument within the meaning of Florida's Uniform Commercial Code.  Fla. Stat. § 673.1041(1) (defining "negotiable instrument"); *Fed. Nat'l Mortg. Ass'n v. McFadyen*, No. 3D15-1822, ___ So. 3d ___, 2016 WL 1658773, at *2 (Fla. 3d DCA Apr. 27, 2016) ("[p]romissory notes are, by definition, negotiable instruments").  Pursuant to Fla. Stat. § 673.3011, a person is entitled to enforce a negotiable instrument if the person is: "(i) The holder of the instrument; (ii) A nonholder in possession of the instrument who has the rights of a holder; or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to s. 673.3091 or s. 673.4181(4)."  A "holder" is defined, in relevant part, as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."  Fla. Stat. § 671.201(21)(a).

Defendants do not challenge BB&T's assertion that it is a "holder" of Note One and Note Two and thus has standing to enforce the notes.  BB&T's counsel avers that BB&T is in possession of the original notes.  Docs. 43, 53.  Note One is payable to BB&T.  Doc. 42-1 at 18.  Note Two, which was originally executed with Colonial Bank, contains an allonge, specifying that the note is payable to BB&T.  Doc. 42-1 at 109; *see Booker v. Sarasota, Inc.*, 707 So. 2d 886, 887 n.1 (Fla. 1st DCA 1998) (defining an allonge).  Accordingly, the Court turns to consideration of BB&T's claims under Note One and Note Two.

### 1.  Note One

A cause of action on a promissory note arises when a defendant fails to pay the note when due.  *Stearns Bank Nat'l Ass'n v. Marrick Props., LLC*, No. 8:11-CV-2305-T-30AEP, 2012 WL 1155657, at *2 (M.D. Fla. Apr. 5, 2012); Fla. R. Civ. P.  BB&T asserts that P&G failed to pay Note One as of its scheduled maturity date of September 19, 2014.

Defendants do not dispute that P&G failed to make a timely maturity payment. They do, however, assert that BB&T should be equitably estopped from declaring a default on Note One. Defendants maintain that each of the prior modifications to Note One was preceded by a significant lapse of time following the maturity date (85 days, 20 days, 376 days, 27 days, and 40 days, respectively) during which BB&T never declared a default. Doc. 46 at 3-5. Defendants argue that BB&T's decision to declare a default on October 13, 2014, only 14 days after the current maturity date, ran counter to the parties' consistent pattern of dealing. Defendants contend that BB&T's conduct was all the more inequitable because Defendants were negotiating with BB&T for another extension of the maturity date. *Id.* at 5-6.

BB&T raises three points in its reply brief. First, BB&T correctly observes that Defendants failed to plead equitable estoppel as an affirmative defense, which would generally result in waiver of the defense. *See* Doc. 38; *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1221-22 (11th Cir. 2012). Second, BB&T points out that Defendants failed to submit an affidavit or declaration from Papa or Gipe to document the majority of the factual assertions in Defendants' response brief. Finally, BB&T contends that the equitable-estoppel defense fails on the merits, even if Defendants' belated and unsupported arguments are considered. The Court agrees.

Under Florida law, it is well-established that the holder of a note or mortgage may be estopped from declaring a default under certain circumstances. *Koschorek v. Fischer*, 145 So. 2d 755, 757 (Fla. 2d DCA 1962). One such circumstance is when the borrower relies on the lender's pattern of conduct, or specific representations to the borrower, whi suggest the lender will not declare a default. *Campbell v. Werner*, 232 So. 2d 252, 256 (Fla. 3d DCA 1970); *Regions Bank v. Old Jupiter, LLC*, 449 F. App'x 818, 820 (11th Cir. 2011). Critically, however, the borrower's reliance must be "reasonable" or "justifiable." *Campbell*, 232 So. 2d at 256 (mortgagor

"reasonably could assume" that the mortgagee would not declare a default); *Regions Bank*, 449 F. App'x at 820 (requiring "justifiable reliance").

BB&T argues that any purported reliance in this case was not justified because Note One included an anti-modification clause.  Specifically, Note One provided: "From time to time the maturity date of this Note may be extended, or this Note may be renewed in whole or in part[.] . . . No waivers or modifications shall be valid unless in writing and signed by the Bank."  Doc. 42-1 at 20, ¶ 8.

The anti-modification clause gave Defendants clear notice that any modification to the maturity date required a writing signed by BB&T.  There is no indication that the anti-modification clause had ever been waived by BB&T's course of performance.  *See*  Fla. Stat. § 671.205(6) ("A course of performance is relevant to show a waiver or modification of any term inconsistent with the course of performance.").  In fact, each "Note Modification Agreement" was in writing.  Doc. 42-1 at 24-35.  Accordingly, the Court finds that Defendants could not have justifiably relied on any purported course of performance, course of dealing, or representation, absent a signed writing extending the maturity date.  *See Regions Bank v. 62%2C Ocean Sport Fish*, No. 13-20966-CIV, 2014 WL 4055707, at *11 (S.D. Fla. Aug. 14, 2014) (holding that an anti-modification clause precluded a finding that the borrower justifiably relied on lender's alleged statements that it would modify the loan and not take any formal action); *Fifth Third Bank v. Alaedin & Majdi Invs., Inc.*, No. 8:11-CIV-2206-T-17, 2013 WL 623895 at *4-5 (M.D. Fla. Feb. 20, 2013) (same); Fla. Stat. § 671.205(5)(a) (providing that the express terms of a contract control over course of performance or course of dealing).[1]

---

[1] Defendants' authority does not address the effect of an anti-modification clause. *E.g., Campbell*, 232 So. 2d 252; *Smith v. Landy*, 402 So. 2d 441 (Fla. 3d DCA 1981); *Amerifirst Fed. Sav. & Loan*

BB&T's Motion for Summary Judgment is therefore granted as to Count I, to the extent that BB&T has established P&G's liability for the breach of Note One.

### 2. Note Two

In Count II of the Complaint, BB&T alleges that P&G's default under Note One triggered a cross-default provision in Note Two. Specifically, Note Two provides:

> **DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:
>
> . . .
>
> **Other Defaults.** Borrower fails to comply with or perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with *or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.*
>
> . . .
>
> **Events Affecting Guarantor.** *Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness*[.]

Doc. 42-1 at 107 (emphasis added). Because P&G is a guarantor for Note Two, BB&T asserts that P&G's default on Note One is a default with respect to "any other agreement between Lender and [Guarantor]."

In response, Defendants argue that the phrase "any other agreement between Lender and [Guarantor]" refers to agreements with Colonial Bank, not BB&T, because Note Two specifically identifies Colonial Bank as the "Lender." Doc. 42-1 at 107. Defendants maintain that the cross-default provision is not triggered in this case because Note One was executed with BB&T, not Colonial Bank. Alternatively, Defendants assert that the cross-default provision is ambiguous and should be construed in Defendants' favor.

---

*Ass'n of Miami v. Century 21 Commodore Plaza, Inc.*, 416 So. 2d 45 (Fla. 3d DCA 1982); *Pearson v. Arthur*, 248 So. 2d 227 (Fla. 3d DCA 1971).

Defendants are correct that Note Two identifies Colonial Bank as the "Lender." Doc. 42-1 at 107. However, Note Two provides that: "The terms of this Note . . . shall inure to the benefit of Lender and its successors and assigns." *Id.* at 108. BB&T also contends that, as an assignee of Note Two, it possesses all the rights of Colonial Bank and effectively "steps into the shoes" of Colonial Bank. *State v. Family Bank of Hallandale*, 667 So. 2d 257, 259 (Fla. 1st DCA 1995) (discussing non-negotiable instruments). BB&T further observes that documents related to Note Two, such as the mortgage, expressly define Lender to mean "Colonial Bank, N.A., its successors and assigns" (Doc. 42-2 at 14), and argues that Note Two should be interpreted consistently with the related documents.

Florida's U.C.C. is supplemented by ordinary rules of contract interpretation, except where displaced by particular provisions of the U.C.C. Fla. Stat. § 671.103. In evaluating the written terms of a contract, "every provision should be given meaning and effect and apparent inconsistencies reconciled if possible." *Therrien v. Larkins*, 959 So. 2d 365, 367 (Fla. 5th DCA 2007). "[A]bsent any evidence that the parties intended to endow a special meaning in the terms used in the agreement, the unambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words." *Kipp v. Kipp*, 844 So.2d 691, 693 (Fla. 4th DCA 2003). "[A] court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction." *Id.*

In this case, construing the term "Lender" as referring only to Colonial Bank would result in an absurd and inconsistent construction. Note Two includes repeated reference to "Lender." For instance, Note Two requires the borrower to pay the "Lender," and provides that the "Lender" has the right to accelerate payments upon a default. Doc. 42-1 at 107. With respect to those provisions, Defendants do not dispute that "Lender" means BB&T. Indeed, that interpretation is

11

fully consistent with Note Two's requirement that the terms of the note "inure to the benefit of Lender and its successors and assigns." Doc. 42-1 at 108. Accordingly, the Court finds that there is no ambiguity in the term "Lender" and that it properly applies to BB&T. *Cf. Smith v. Reverse Mortgage Sols., Inc.*, No. 3D13-2261, ___ So. 3d ___, 2015 WL 4257632, at *3 (Fla. 3d DCA July 15, 2015) (holding that the term "Borrower," which was associated only with the husband in the first paragraph, also included his wife, who signed as a borrower).

Defendants raise no other challenge to the application of the cross-default provision. Because the Court finds, as a matter of law, that P&G defaulted under Note One, the Court further finds that a default occurred under Note Two, as a matter of law, pursuant to the cross-default provision. BB&T's Motion for Summary Judgment is therefore granted on Count II, to the extent that BB&T has established DAPRSG's liability for the breach of Note Two.

### C. Breach of the guaranties

In Counts III through VII, BB&T brings actions on the guaranties executed by Papa and Gipe for Note One, and by Papa, Gipe, and P&G for Note Two. "A guaranty is a collateral promise to answer for the debt or obligation of another." *Fed. Deposit Ins. Corp v. Univ. Anclote, Inc.*, 764 F. 2d 804, 806 (11th Cir. 1985). "[T]he elements of an action for breach of a guaranty arise from a debtor's default and the guarantor's subsequent failure to pay." *Bank First v. Guillem*, No. 609-CV-152-ORL-31KRS, 2009 WL 1930190, at *5 (M.D. Fla. June 30, 2009). When a guaranty is absolute, "the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors." *Mullins v. Sunshine State Serv. Corp.*, 540 So. 2d 222, 223 (Fla. 5th DCA 1989).

For the reasons discussed herein, BB&T has established defaults as a matter of law under Note One and under Note Two. According to Gregory Biegel, a Senior Vice-President at BB&T,

12

the bank has demanded that P&G pay the amounts due under Note One[2] and that DAPRSG pay the amounts due under Note Two, but P&G and DAPRSG have failed to pay.  Biegel Aff. at ¶¶ 1, 13-14, 19-20; Doc. 42-1 at 104-06.  Accordingly, BB&T's Motion for Summary Judgment is granted on Counts III through VII, to the extent that liability is established on these claims.

### D.  Foreclosure of the lien on rents

In Count VIII of the Complaint, BB&T brings an action against DAPSRG to foreclose BB&T's lien on rents.  Pursuant to Fla. Stat. § 697.07, "[a] mortgage or separate instrument may provide for an assignment of rents of real property or any interest therein as security for repayment of an indebtedness."  Fla. Stat. § 697.07(1).  "If such an assignment is made, the mortgagee shall hold a lien on the rents."  Fla. Stat. § 697.07(2).  Unless the parties agree otherwise, Fla. Stat. § 697.07 "gives a mortgagee the right to pursue his remedies automatically upon default by the mortgagor."  *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 498 (Fla. 3d DCA 1994).  However, "a mortgagee's right to pursue foreclosure is subject to two conditions precedent: (1) the assignee must make a written demand for the rents; and, (2) the mortgagee must refuse to turn over the rents."  *Id.*

Defendants do not dispute that BB&T has standing to enforce the Assignment of Rents.  *Stearns Bank, N.A. v. Shiraz Investments, LLC*, No. 8:12-CV-313-T-33TGW, 2012 WL 4058246, at *2 (M.D. Fla. Sept. 14, 2012) (holding that bank had standing to enforce assignment of rents).

---

[2] Although Defendants raise no challenge specific to BB&T's claims on the guaranties, the Court notes that Defendants represent that they have paid off the principal amount of Note One in full. Doc. 46 at 6.  "As a general rule, the extinction of the principal obligation extinguishes that of the guarantor."  *Ulrich v. Ulrich*, 603 So. 2d 78, 80 n.1  (Fla. 2d DCA 1992); *Univ. Anclote, Inc.*, 764 F. 2d at 806.  Here, however, BB&T alleges that P&G owes attorneys' fees under Note One. Attorneys' fees are within the scope of the Note One guaranties, which are either "unlimited" or specifically apply to reasonable attorneys' fees and legal expenses.  *E.g.*, Doc. 42-1 at 142, 154, 160, 172.

As discussed, DAPRSG has defaulted on Note Two.  On October 13, 2014, BB&T issued a written demand for the rents.  Biegel Aff. at ¶ 50; Doc. 42-1 at 106.  It is undisputed that DAPRSG has not turned over the rents.  Accordingly, BB&T's Motion for Summary Judgment is granted on Count VIII.

## IV.    Conclusion

For the reasons stated, BB&T is entitled to summary judgment as to Defendants' liability on all claims.  However, to the extent that BB&T requests a final judgment on damages, the Motion for Summary Judgment is denied.

Among other damages, BB&T requests $20,255.26 in attorneys' fees under the terms of Note One.  Doc. 54 at 5; Doc. 42 at 4, 19.  Because the attorneys' fees derive from Note One, they are an element of damages under Florida law and must be proved at trial.  Fed. R. Civ. P. 54(d)(2)(A); *Hancock Bank v. Lexon Homes, Inc.*, No. 6:13-CV-318-ORL-41, 2015 WL 2343013, at *4 (M.D. Fla. May 14, 2015).  At this juncture, the amount of attorneys' fees requested by BB&T appear to be disputed.  The Motion does not discuss the relevant contractual fee provisions or cite evidence such as attorney billing records.  Instead, BB&T provides "account payoff records," which do not include attorney billing records.  Biegel Aff. at ¶ 13; Doc. 42-1 at 41-103. Defendants object to BB&T's failure to provide attorney billing records, an issue that BB&T does not address in its reply brief.  Doc. 46 at 6, 9; Doc. 49.  There is insufficient evidence in the record for the Court to determine the damages (attorneys' fees), as a matter of law.

With respect to Note Two, BB&T claims $701,245.64 in damages, an amount which includes a principal balance of $695,076.55 and attorneys' fees of $5,659.60, plus interest.  Doc. 54 at 5; Doc. 42 at 5, 19.  Notably, BB&T's Requests for Admissions to DAPRSG, which BB&T cites in partial support of this request, list the principal balance as $754,498.95, rather than

$695,076.55.  Doc. 42-4 at ¶ 7.  While the discrepancy may be explained by Defendants'
contention that they have continued to make payments on Note Two (Doc. 46 at 6-7), BB&T does
not acknowledge or explain the discrepancy.  In addition, BB&T again fails to provide record
support for the request for attorneys' fees.

The Court, therefore, finds that the claimed damages for Counts I through VII are disputed.
With respect to Count VIII, by contrast, BB&T requests entry of an *in rem* final judgment of
foreclosure.  Doc. 42 at 20.  As discussed, BB&T has demonstrated its entitlement to judgment as
a matter of law on Count VIII and no issues of fact remain.  Although the Court will defer entry
of the *in rem* judgment until entry of final judgment, BB&T shall file a proposed *in rem* judgment
to the Court consistent with the instructions below.

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

(1)    BB&T's Motion for Summary Judgment (Doc. 42) is GRANTED as to Defendants'
liability and DENIED as to damages.

(2)    The issue of damages will be heard at the bench trial set for the trial term
commencing August 1, 2016.  The parties are encouraged to confer prior to trial to resolve or
narrow the damages issues.

(3)    On or before July 19, 2016, the date of the Pretrial Conference, BB&T shall e-mail
the proposed *in rem* judgment, in a Word or WordPerfect document, to
chambers_flmd_honey@flmd.uscourts.gov, with a copy to opposing counsel.

**DONE AND ORDERED** in Tampa, Florida on July 8, 2016.

Charlene Edwards Honeywell
United States District Judge

Copies to:

15

Counsel of Record